UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| ASA CROSS, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| vs. | : | FILE NUMBER |
| | : | |
| SYNTER RESOURCE GROUP, LLC, | : | 5:17-cv-00446-MTT |
| | : | |
| Defendant. | : | |

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Asa Cross filed this action alleging that Synter violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 et seq. The actions taken by Synter, as alleged in the Complaint are not in dispute; Synter admits that it attempted to contact Cross by telephone on four occasions. (Additionally, Synter sent three letters to Cross.) Cross alleges that two telephone messages left on his cell phone voicemail violated the FDCPA because the messages did not affirmatively state that they were from a debt collector. Without conceding that any of its attempts to contact Cross constituted an improper contact, Synter shows the Court that this fact issue need not be decided, because summary judgment is appropriate as a matter of law.

1

Only contacts by debt collectors made in the course of efforts to collect a "debt" as that term is defined in the FDCPA can give rise to liability.  The undisputed facts show that Cross utilized FedEx Freight as part of a transaction which was not for personal, family or household purposes.  Therefore, the FedEx Freight charges which were the subject of Synter's collection efforts are not a "debt" as that term is defined in the FDCPA.

UNDISPUTED FACTS

In moving for summary judgment, Synter shows that the following facts, material to the issue of liability, are not in dispute:

Cross acquired a number of pieces of commercial electronic testing equipment when that equipment was being discarded by its owner, Lockheed Martin. [Deposition of Asa Cross, pp. 12-17]  Cross stored the equipment in his sister's garage, where it was not used (with one exception) [Cross Depo., p. 14]. Cross proceeded to advertise the equipment for sale on eBay [Cross Depo., p. 34], negotiating the sale of most of the equipment to ANA Instruments, Inc. ("ANA"), but also to at least two other buyers. Cross took the equipment he was selling to ANA back to his place of work, packed it all on a pallet, which weighed 600 pounds, and took the pallet to the FedEx Freight depot in Macon for shipment to ANA [Cross Depo., pp. 42-44.] using a FedEx Freight bill of lading, which had been prepared by ANA [Cross Depo., p. 68]. The FedEx Freight charge for the

shipment to ANA was $1,065.36, for which FedEx began sending Cross invoices for the shipping costs.  [Cross Depo., Exhibits M - R].

FedEx Freight placed the account with Synter for collection in November, 2016.  [Deposition of John Church, p. 50, Ex. E]  Synter placed a total of four phone calls to Cross' telephone number.  [Church Depo., Ex. D]  The initial two calls stated "Hi, this is Dominique I'm calling from Synter Resource, on behalf of FedEx Freight, I'm trying to contact the accounts payable regarding an outstanding invoice forwarded to our office for collection.  Please return the call and reference number 3624167724 when calling.  My number is 843-746-2200 extension 1679. Thank you**.**"  [Church Depo., Ex. D]   Synter also sent a demand letter to Cross on November 8, which letter contained both the "mini-Miranda" and "validation notice" required under the FDCPA.  [Cross Depo., Ex. S]  The account was closed by Synter on February 5, 2017, pursuant to its collection agreement with FedEx Freight.  [Church Depo., p. 121]

## STATUTES INVOLVED

"The term 'debt' means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. §1692(a)(5).

ARGUMENT AND CITATION TO AUTHORITY

The FDCPA applies "only to payment obligations of a (1) *consumer* arising out of a (2) *transaction* in which the money, property, insurance, or services at issue are (3) *primarily for personal, family, or household purposes.* The statute thus makes clear that the mere obligation to pay does not constitute a "debt" under the FCPA." Oppenheim v. I.C. Sys., Inc., 627 F.3d 833, 837 (11th Cir. 2010). Synter does not dispute that Cross is a natural person and as such qualifies as a "consumer" under 15 U.S.C. §1692(a)(3). Synter does not dispute that the obligation arises out of a transaction – namely Cross' shipment via FedEx Freight for which FedEx Freight sought payment. However, Synter shows that the transaction was <u>not</u> primarily for personal, family or household purposes and thus was not a "debt" under the FDCPA. The undisputed facts show that Cross engaged FedEx Freight to complete a business transaction, namely selling a significant quantity of commercial electronics testing equipment to a dealer in such equipment for a significant profit.

A.    <u>Cross has failed to present any evidence which would show a personal, family or household purpose.</u>

Cross has the burden of proving each of the elements of the case, including that the transaction which gave rise to the debt was for personal, family or household purposes. "In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion,

against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex v Catrett*, 477 U.S. 319, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).   In response to Synter's Interrogatory requesting the facts upon which Cross based his allegation that this was a "consumer debt," Cross states that he "is not in the business of buying and selling electronics equipment." [Response to Defendant's Second Interrogatories, no. 12]  This response does not present the Court with any evidence to show a personal, family or household purpose.  "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).  Cross has merely denied being engaged in a business, which does not in itself deny that he engaged FedEx Freight in a business transaction, and he specifically has failed to identify any personal, family or household purpose which was served by his FedEx Freight shipping the goods.

Synter also requested that Cross produce any documentation in his possession "which would support, evidence or explain your contention that the FedEx Freight charge for the shipment to ANA Instruments on May 6, 2016 was a

transaction primarily for personal, family or household purposes." In response, Cross produced several email strings between Cross and ANA Instruments, which plainly establish that the sale of this equipment was negotiated between the parties and further shows that for several of the items involved, Cross was selling multiple quantities of the same type equipment. [Plaintiff Asa Cross' Responses to Synter Resource Group LLC's Second Request for Production of Documents to Plaintiff Asa Cross, Ex. "A"] "To recover under [the FDCPA] a plaintiff must make a threshold showing that the money being collected qualifies as a 'debt.' " *Oppenheim v. I.C. System, Inc.,* 627 F.3d 833, 836–37 (11th Cir. 2010). That threshold showing requires evidence from which the Court can find that the transaction served a personal, family or household purpose. Cross has failed to make that threshold showing, the "evidence" presented showing instead that Cross and ANA were negotiating a commercial sale transaction, and no evidence whatsoever regarding how the use of FedEx Freight's shipping services were for a personal purpose. Summary judgment for Synter is appropriate.

B.  Cross' testimony evidence establishes that FedEx Freight provided shipping services as part of a business, rather than personal, transaction.

However, Synter does not merely rely upon the absence of affirmative evidence by Cross to show that there was no personal, family or household purpose for the FedEx Freight shipment. The facts, established by Cross' testimony, show

that Cross engaged FedEx Freight in one step necessary to complete a business transaction and no part of that entire business transaction was for personal, family or household purposes.

Cross asserts that he "is not in the business of buying and selling electronics equipment." Cross' definition of business, however, is too narrow – focused on whether he operated a business rather than whether he was engaged in a business transaction. (Synter does not argue that Cross was actually operating a business of buying and selling commercial electronics testing equipment; this was clearly what is colloquially known as "a side hustle" – a bit of business performed for income to supplement one's main job.) Cross' testimony makes it plain that an opportunity arose for him to acquire a truck load of commercial electronics testing equipment for free and "I pulled it out of the trash." [Cross Depo., page 12] Cross saw an opportunity with a significant potential profit margin (since the acquisition costs were nil) by selling the used equipment on eBay, and he took it. It may have been a one-time opportunity, but it was clearly a business opportunity.

Business is defined, in Black's Law Dictionary as "Employment, occupation, profession or commercial activity engaged in for gain or livelihood." Cross would have the Court focus on whether selling and shipping commercial electronic testing equipment is his employment, occupation or profession. That emphasis, however, ignores the remainder of the dictionary definition –

"commercial activity engaged in for gain." Clearly one can <u>do</u> business without <u>running</u> a business. Cross here was doing business, by engaging in the activity of selling commercial electronic testing equipment to multiple buyers and using various instrumentalities of interstate commerce to complete the sales.

Cross' testimony also demonstrates that the equipment, prior to its sale, had served no personal or household purposes.  Cross took the equipment from his job location and stored it in the garage at his sister's house. [Cross Depo., pp. 26-27] With one exception, he never attempted to make use of the equipment, even stating that some of the equipment "could kill me if I'm not careful" [Cross Depo., p. 17] and "I'd blow anything up that I had to use it on." [Cross Depo., p. 19]  This is not a situation where an individual was selling a few personal items online.  [Compare *Oppenheim v I.C. System, Inc.*, 627 F.3d 833 (11th Cir. 2010), where the individual sought to sell his laptop computer via Craigslist and was back-charged on his personal PayPal account.]  The equipment is not intended for household or family use; Cross identified each piece in terms of its use in testing other commercial electronics equipment.

Cross advertised the equipment for sale on eBay. [Cross Depo., p. 35]  In fact, he initially only advertised a few of the items, "selling it as single parts at a time." [Id.]  The eBay listing resulted in three sales: "ANA bought two or three things and somebody else – two other people bought two other things." [Cross

Depo., p. 36]  Cross then negotiated the sale of virtually all of the remaining equipment to ANA.   [Cross Depo., pp. 37-42]  Having reached agreement with ANA on the several items to be sold and their respective prices, Cross took all of the equipment being sold to ANA back to his place of work, packaged it in a tri-wall packing box on a wood pallet, weighed the load and reported that information to ANA.  [Cross Depo., pp. 42-44]  ANA provided Cross with a FedEx Freight bill of lading and he drove the 600 pound pallet to the FedEx Freight depot loading dock. [Cross Depo., p. 45]  ANA ultimately paid Cross "$2000 or somewhere around there." [Cross Depo., p. 48]  In the transaction, there was clearly a misunderstanding or a mistake by ANA Instruments when it supplied Cross with a Bill of Lading that did not provide for the shipment to be paid by ANA as consignee.  As a result, Cross believed he did not owe FedEx Freight for the shipment. [Cross Depo., page 52]  But Cross' sincere belief regarding who was supposed to pay the commercial freight charges does not convert FedEx Freight's or Synter's attempts to collect those charges into a "consumer debt."  Rather, these facts plainly demonstrate that Cross did not utilize FedEx Freight for any personal, family or household purpose.

The limited definition of "debt" in the FDCPA to transactions for personal, family or household purposes was intentional, in order to exclude collection of debts that are related to business transactions.   As Cross notes in his Complaint,

the FDCPA is a consumer protection statute, "to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e (emphasis added).  The debt collection which the statute was meant to exclude is commercial debt.  Black's Law Dictionary defines "commercial" as that which "Relates to or is connected with trade and traffic" and "commerce" is defined as "The exchange of goods, productions or property of any kind." (emphasis added)  Under these definitions, Cross and ANA were clearly engaged in a commercial transaction and FedEx Freight was one of the instrumentalities used – along with eBay, email and PayPal – to allow Cross to sell 16 pieces of commercial electronics equipment for some $2000.

Further contradicting Cross' contention that he was not engaged in a business transaction is the fact that there was not just the single transaction with ANA.  Cross testified that the initial eBay offering resulted in "two other people [who] bought two other things."  [Cross Depo., p. 36]  He also testified that he sold more of the equipment subsequent to the ANA sale - "I think I sold one power supply after that that was still posted up on eBay that he didn't want." [Cross Depo., p. 38]  From this testimony, it is clear that Cross engaged in three or four separate sales transactions of commercial electronics testing equipment.  Cross was plainly advertising commercial goods via the Internet with the intention of exchanging them for his financial gain.  FedEx Freight was engaged to deliver the

10

equipment to ANA Instruments.

From FedEx Freight's perspective, nothing about the transaction suggests a personal, family or household purpose. The shipment was delivered to the FedEx Freight dock in Macon. The shipper presented a FedEx Freight "Uniform Straight Bill Of Lading" identifying one pallet of used test equipment weighing 600 pounds. [Cross Depo., Exhibit W] It was shipped to the consignee, ANA Instruments, on May 6 and Cross was billed on May 12 for the shipping cost. [Cross Depo., Exhibit "M"] At no point was FedEx Freight, and by extension Synter, on notice that this was any different than all of the other commercial transactions that started with a large pallet being delivered to the Macon freight facility.

All of the facts in this case show that Cross set out to benefit from the centuries-old adage that "one man's trash is another man's treasure." Cross acquired, at no expense, a substantial quantity of commercial electronic testing equipment, for which he had no personal use and which he then sold to several buyers who responded to his eBay advertisement, receiving money for the goods delivered. Had Lockheed Martin, prior owner of the equipment, advertised it on eBay, sold it to ANA and shipped it via FedEx Freight, it would undoubtedly have been considered a commercial transaction – though Lockheed Martin is also not primarily engaged in the business of selling electronic testing equipment.

Cross' position requires that this Court find that because an <u>individual</u> was trying to make a few dollars off of some old equipment, rather than the company that owned it before, the transaction was somehow not a commercial one but instead for personal, family or household purposes.  This is simply not correct. The only "personal" aspect of the transaction – from Cross' acquisition of the equipment, through his advertisement on eBay, his negotiations with ANA and other buyers, and ultimately using FedEx Freight to deliver the equipment to ANA – was that the money from ANA went into Cross' personal account.  Contrary to Cross' contention, the mere fact that an individual conducts a transaction does not *ipso facto* make that transaction a "debt" under the FDCPA.  One does not have to have a trade name, an office, a subscription account with eBay or Paypal, or file a 1040 Schedule C in order to do a little business.

## CONCLUSION

"Where the record as a whole could not lead a rational trier of fact to find in the nonmovant's favor, there is no genuine issue of fact for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* , 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)."  <u>Martin v Allied Interstate, LLC</u>, 192 F.Supp.3d 1296 (S.D.Fla. 2016).  Cross has not provided the Court with any evidence to show that the FedEx Freight charges were incurred as part of a transaction for personal, family or household purposes.  In fact, Cross' evidence plainly shows that FedEx Freight

provided commercial shipping services to deliver 600 pounds of commercial electronic testing equipment to a buyer in order to complete a business, not personal, transaction between Cross and ANA.  There are no genuine issues of fact for trial on the issue of whether this transaction resulted in a "debt" as that term is defined in the FDCPA.

WHEREFORE, Defendant Synter Resource Group, Inc. respectfully requests that this Court grant summary judgment in its favor.

This 10th day of September, 2018.

HAYS POTTER & MARTIN, LLP
Attorneys for Plaintiff

    /s/ James W. Hays

3945 Holcomb Bridge Road, Suite 300    James W. Hays
Peachtree Corners, Georgia 30092    Georgia Bar # 340910
Phone:  (770) 934-8858
beau@hpmlawatl.com

# CERTIFICATE OF SERVICE

I hereby certify that on this date, I have served this Memorandum of Law in Support of Defendant's Motion for Summary Judgment upon Plaintiff's counsel via CM/ECF:

Cliff Carlson Law, P.C.                 Daniels Law LLC
Attn:  Clifford Carlson                 Attn: Ronald E. Daniels
1114-C-1 Highway 96 #347                P.O. Box 1834
Kathleen, GA 31047                      Perry GA  31069


This 10th day of September, 2018.

HAYS POTTER & MARTIN, LLP
Attorneys for Plaintiff


                                        ___/s/ James W. Hays____
3945 Holcomb Bridge Road, Suite 300     James W. Hays
Peachtree Corners, Georgia 30092        Georgia Bar # 340910
Phone:  (770) 934-8858
beau@hpmlawatl.com

11553

14