**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| ASA CROSS, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 5:17-cv-00446-MTT |
| | : | |
| | : | |
| SYNTER RESOURCE GROUP, LLC | : | |
| Defendant. | : | |

### Plaintiff's Brief in Support of his Motion for Partial Summary Judgment

In support of his Motion for Partial Summary Judgment, Plaintiff shows as follows:

### I.     Brief Procedural History

This case was filed on November 11, 2017.[1] Pursuant to the terms of the Scheduling/Discovery Order, dispositive motions are to be filed on September 10, 2018.[2] Thus, this case is ripe for summary adjudication.

### II.     Factual History: How did we get here?

This case began when Plaintiff went dumpster-diving—with the permission of his former employer—and took home several pieces of used testing equipment

---

[1] ECF Doc. 1.

[2] ECF Doc. 10.

his employer was discarding.[3] Plaintiff used the equipment as a hobbyist disassembling the equipment for fans and even building "little race cars."[4] Plaintiff decided to sell some of the equipment on eBay.[5] This was the first and last time he would sell anything on eBay.[6] And Plaintiff did not have a business account with eBay.[7]

Plaintiff contacted ANA Instruments—a company that purchased some of the testing equipment from eBay—about purchasing the remaining equipment Plaintiff "had no use" for.[8] He agreed to sell ANA Instruments some of the equipment and he kept the rest for his own personal use.[9] ANA Instruments sent Plaintiff a bill of lading and instructed him to deliver the equipment to FedEx after stating ANA

---

[3] Deposition of Asa Cross ("Cross") 12:10-17; 13:13-24; 17:3-7.

[4] Cross 14:2-24.

[5] Cross 34:9-21.

[6] *Id.*

[7] Cross 65:21-66:7.

[8] Cross 37:21-38:5; 38:14-21.

[9] *Id.*

1873-0036

Instruments would pay all shipping charges.[10] Plaintiff confirmed with FedEx that ANA Instruments was responsible for the shipping charges.[11]

Several months later, Plaintiff received a phone call and letters from Defendant seeking to collect a debt owed to FedEx arising out of the shipping of the testing equipment.[12] Defendant's employee left a voicemail on Plaintiff's cellular phone without disclosing the call was from a debt collector.[13] Concerned, Plaintiff sent a letter disputing the alleged debt to Defendant and asking Defendant to validate the debt pursuant to 15 U.S.C. 1692g. This letter was not returned as undeliverable to the Plaintiff and bore the correct address for the Defendant.[14]

Defendant kept attempting to collect the debt after Plaintiff's validation demand on January 9, 2017 by a dunning letter and with another voicemail on January 17, 2017.[15] Plaintiff retained counsel who sent a demand letter in

---

[10] Cross 45:4-19; 46:6-21.

[11] *Id*.

[12] See Exhibit "D" to Deposition of John Church ("Church"); Church 49:16-24.

[13] *Id*.

[14] Cross 60:1-62:1; 67:11-17; Church 21:1-2.

[15] Exhibit "K" to Church Deposition.

1873-0036

compliance with Georgia's Fair Business Practices Act to the Defendant—again disputing the debt—and Defendant failed to respond or meet the demand.[16]

### III. Argument and Citation to Authority

#### A. Summary Judgment Standard.

This Court is unquestionably familiar with the standard for summary judgment. To be short, summary judgment is appropriate if a jury, viewing all facts and any reasonable inferences from facts viewed most favorable to nonmoving party, could not reasonable return verdict in that party's favor.[17] In the context of a consumer protection statute (such as the FDCPA and GFBPA) the Court must liberally construe the statute because the statute is remedial in nature.[18]

#### B. How Defendant's conduct violated the FDCPA

The FDCPA was passed by Congress in an effort "to eliminate abusive debt collection practices by debt collectors, to insure those debt collectors who refrain

---

[16] *See* Exhibit "P" filed herewith.

[17] *San Pedro v. United States*, 79 F.3d 1065 (11th Cir. 1996).

[18] *Ellis v. General Motors Acceptance Corporation*, 160 F.3d 703, 707 (11th Cir. 1998).

from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State actions to protect consumers against debt abuses."[19]

The FDCPA establishes a system of enforcement primarily by "private attorney generals."[20] The FDCPA is a remedial, strict liability statute to be liberally construed requiring no proof of deception or actual damages to obtain its statutory remedies.[21]

The FDCPA imposes three requirements to establish a violation: (1) the plaintiff who has been the object of a collection activity is a "consumer" as defined by 15 U.S.C. § 1692a(3); (2) the defendant collecting the debt is a "debt collector" as defined by 15 U.S.C. § 1692a(6); and (3) the defendant engaged in any act or omission in violation of any provision of the FDCPA.[22]

---

[19] *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010) (quoting 15 U.S.C. § 1692e).

[20] 15 U.S.C. § 1692k; *West v. Costen*, 558 F.Supp. 564 (W.D. Va. 1983); *Whatley v. Universal Collection Bureau, Inc.*, 525 F.Supp. 1204, 1206 (N.D. Ga. 1981).

[21] *LeBlanc*, 601 F.3d at 1190.

[22] *Stewart v. Regent Asset Mgmt. Solutions*, 2011 U.S. Dist. LEXIS 50046, at *7 (N.D. Ga. 2011) (quoting *Kaplan v. Assetcare, Inc.*, 88 F.Supp.2d 1355, 1360-61

i.	Plaintiff is a "consumer" with standing to bring a claim for violations of the FDCPA.

Plaintiff is a natural person residing in Warner Robins, Georgia and never opened the alleged account.[23] Thus, he is a consumer for purposes of the FDCPA.[24] Because he alleges Defendant violated his statutory rights and caused him mental anguish, he has Article III standing to bring the claims raised in this lawsuit.[25]

ii.	Defendant is a "debt collector" that attempted to collect a "debt" from Plaintiff.

Defendant (in Paragraph 9 of its Answer) admitted it is a "debt collector" as defined by 15 U.S.C. § 1692a(6), which states (in pertinent part) a debt collector is

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

---

(S.D. Fla. 2000); *see also Reese v. Ellis, Painter, Ratterree & Adams LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012).

[23] Cross 6:15-25; 46:6-21.

[24] 15 U.S.C. § 1692a(3).

[25] *Church v. Accretive Health, Inc.*, 654 Fed. Appx. 990 (11th Cir. 2016)(explaining that an injury need not be tangible to be concrete and violation of FDCPA constituted a concrete injury conveying Article III standing).

1873-0036

Within the context of the FDCPA, "debt" is defined as

> [A]ny obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

While the Defendant readily admits it is a "debt collector" it contends the alleged account is not a "debt" because it was a commercial account. This admission in judicio is at odds with other denials made by the Defendant as the definition of a "debt collector" requires a qualifying "debt" under the FDCPA. Significantly, the FDCPA does not define what is (or isn't) a commercial debt.

But the Defendant's argument is precisely the argument the Eleventh Circuit rejected in *Oppenheim v. I.C. Sys.*,

> In any event, we are unpersuaded that the sale of Oppenheim's personal computer—the funds from which were ultimately transferred to Oppenheim's personal bank account—violates the "personal, family, or household purposes" requirement. Oppenheim does not run a business and specifically registered his PayPal account as a "personal account," which the User Agreement defines as an account "used for non-business purposes and used primarily for personal, family, or household purposes."[26]

Like in *Oppenheim,* here the Plaintiff did not have a business account with eBay or FedEx, wasn't engaged in any business activities, and the obligation arose from a

---

[26] 627 F.3d 833, 838-39 (11th Cir. 2010)

transaction (or transactions) that personally benefitted Plaintiff and no one else.[27] Thus, the alleged debt is a "debt" as defined by the FDCPA.

---

[27] Cross 65:21-66:7; 14:2-24; 34:9-21; *see also Fagan v. Lawrence Nathan Associates, Inc.*, 957 F. Supp. 2d 784 (E.D. La. 2013) (collector sought payment from member of a law firm for a business car rental that was used primarily for personal purposes); *Brown v. Palisades Collection, L.L.C.*, 2011 WL 2532909 (S.D. Ind. June 24, 2011) (where letter attached to plaintiff's complaint was addressed to him in a personal capacity, rather than in a corporate or business capacity, this was enough to give plausibility to his allegation that the debt was a consumer debt); *Perk v. Worden*, 475 F. Supp. 2d 565 (E.D. Va. 2007). *See also Smith v. EVB*, 438 Fed. Appx. 176 (4th Cir. 2011) (although related to a purported business transaction, a loan that concerned pro se plaintiff's personal finances, his personal residence, and was taken out in his own name was a personal loan and covered by FDCPA); *Davis v. Midland Funding, L.L.C.*, 41 F. Supp. 3d 919 (E.D. Cal. 2014) (debt collector that attempts to collect an obligation from the wrong person is subject to the FDCPA even if there is some possibility that the underlying obligation stemmed from a commercial transaction).

1873-0036

iii.    <u>Defendant violated the FDCPA</u>.

"The FDCPA is a strict liability statute."[28] The intent of a Defendant is irrelevant and "[l]iability in all cases [is] measured by the 'least sophisticated consumer' standard."[29] The "least sophisticated debtor" standard is an objective standard. The question is not whether this plaintiff was harassed, deceived, or mislead, but rather whether an unsophisticated consumer would have been harassed, deceived, or mislead.[30]

15 U.S.C. §§ 1692e(11) requires a debt collector to disclose in each communication that it is a debt collector. There is no dispute Defendant's employee failed to do this in the December 5, 2016 voicemail left on Plaintiff's cellular

---

[28] *Stewart v. Slaughter*, 165 F.R.D. 696, 699 (M.D. Ga. 1996); see also *Gilmore v. Account Mgmt., Inc.*, No. 1:08- CV-1388-JOF-LTW, 2009 WL 2848278, at *7 (N.D. Ga. Apr. 27, 2009) (explaining that the FDCPA imposes strict liability on the debt collector for misstatements of the amount of debt owed and does not require intentional conduct on the part of the debt collector).

[29] *Id.* (citing *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985)).

[30] *Wright v. Credit Bureau of Georgia, Inc.*, 548 F.Supp. 591, 600 (N.D.Ga.1982), on reconsideration, 555 F.Supp. 1005 (N.D.Ga.1983).

phone.[31] The Eleventh Circuit has repeatedly found voicemails to be communications subject to the disclosure requirements of 15 U.S.C. 1692e(11) and, thus, Defendant's failure to identify itself as a debt collector violates the plain language of the FDCPA.[32]

Defendant's January 9, 2017 dunning letter violates 15 U.S.C. § 1692g(b) by continuing to attempt to collect a debt after a consumer has sent a written demand for verification and validation. The Eleventh Circuit recognized the plain language of 15 U.S.C. § 1692g(b) requires debt collectors to cease collection attempts once verification is requested.[33] In a persuasive opinion, the Seventh Circuit determined that a collection letter sent after a consumer disputed a debt and verification was required was a failure to "cease collection" of the debt.[34] Defendant simply did not

---

[31] See Church 17:6-22; Exhibit "D."

[32] *Hart v. Credit Control, LLC*, 871 F.3d 1255, 1258 (11th Cir. 2017); *Edwards v. Niagara Credit Sols., Inc.*, 584 F.3d 1350, 1351 (11th Cir. 2009).

[33] *Shimek v. Weissman, Nowack, Curry & Wilco, P.C.*, 374 F.3d 1011, 1014 (11th Cir. 2004) ("[t]he plain language of Section 1692g(b) mandates that a debt collector 'cease collection of the debt' once verification is requested").

[34] *Leeb v. Nationwide Credit Corp.*, 806 F.3d 895, 897-98 (7th Cir. 2015).

stop attempting to collect the debt once Plaintiff demanded validation and disputed the debt.

To be sure, Defendant argues it never received Plaintiff's dispute. This argument is unavailing. Plaintiff unequivocally testified he mailed the letter and Defendant does not dispute the letter is properly addressed, thus Plaintiff is entitled to the common law "mailbox rule" presumption.[35]

### C. Defendant's Violations of the FDCPA Constitute Violations of the Georgia Fair Business Practices Act

Plaintiff further alleges Defendant's violations of the FDCPA also violated O.C.G.A. § 10-1-393 et seq, which is known as the Georgia Fair Business Practices Act ("GFBPA.") Interpreting and construing the GFBPA consistently with interpretations of the Federal Trade Commission Act, courts have consistently held that a violation of the FDCPA also constitutes a violation of the GFBPA.[36] The

---

[35] *Bazemore v. Jefferson Capital Systems, LLC*, 827 F.3d 1325, 1331 (11th Cir. 2016).

[36] *See, e.g., 1st Nationwide Collection Agency, Inc.*, 288 Ga. App. at 459, 654 S.E.2d at 431; and, *Gilmore v. Account Management, Inc.*, 357 Fed. App'x 218, 220-21 (11th Cir. 2009); *Carlisle v. Nat'l Commer. Servs.*, No. 17-11762, 2018 U.S. App. LEXIS 28, at *5 (11th Cir. Jan. 2, 2018) (finding GFBPA violated through a

GFBPA "authorizes punitive damages in addition to mandating treble damages for intentional violations."[37] Plaintiff timely submitted the required demand letter to Defendant through his counsel prior to filing this action.[38]

Because everyone is presumed to know the law, an alleged violator of the GFBPA will not be permitted to take advantage of self-professed ignorance of the law, and thereby escape sanctions for an intentional violation.[39] The intentional violation as contemplated by the GFBPA is a volitional act constituting an unfair or

---

violation of the FDCPA); *Burns v. Halsted Fin. Servs., LLC*, No. 1:15-cv-4287-LMM-JKL, 2016 U.S. Dist. LEXIS 139440, at *9 (N.D. Ga. Sep. 13, 2016) ("Plaintiff is correct that a violation of the FDCPA also results in a violation of the GFBPA").

[37] *Conseco Fin. Servicing Corp. v. Hill,* 252 Ga. App. 774, 778, 556 S.E.2d 468, 473 (2001).

[38] Exhibit "P"; O.C.G.A. § 10-1-399(b).

[39] *See Puckett Paving Co. v. Carrier Leasing Corp.*, 236 Ga. 891, 891, 225 S.E.2d 910, 910-11 (1976).

1873-0036

deceptive act or practice conjoined with culpable knowledge of the nature (but not necessarily the illegality) of the act.[40]

---

[40] *Colonial Lincoln-Mercury Sales, Inc. v. Molina*, 152 Ga. App. 379, 383, 262 S.E.2d 820, 823-24 (1979).

## IV.    Conclusion

This Court should grant Plaintiff partial summary judgment as to the issue of liability under the FDCPA and GFBPA because the Plaintiff has always been a consumer. He engaged only in activities benefitting him personally and never held himself out as a business. He went dumpster-diving and sold some spare parts on an internet yard sale. Thus, the Defendant's blatant violations of the FDCPA are actionable.

Submitted September 10, 2018.

**DANIELS LAW LLC**

/s/Ronald Edward Daniels
RONALD EDWARD DANIELS
Georgia Bar No.: 540854
Counsel for Plaintiff

P.O. BOX 4939
Eastman, GA 31023
478.227.7331 (t)
478.352.0173 (f)
ron@dlawllc.com
rondanielslaw.com

/s/ Clifford Carlson
Clifford Carlson
Georgia Bar No. 227503

Cliff Carlson Law, P.C.
1114-C1 Highway 96 #347
Kathleen, Georgia 31047
Tel. 478-254-1018
cc@cliffcarlsonlaw.com