UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

ASA CROSS,

              Plaintiff,
                                Civil Action
        vs.                     No. 5:17-cv-00446-MTT

SYNTER RESOURCE GROUP, LLC,

              Defendant.


30(b)(6)          SYNTER RESOURCE GROUP, LLC
DEPOSITION OF:    BY:  JOHN J. CHURCH

DATE:             May 11, 2018

TIME:             8:54 AM

LOCATION:         Synter Resource Group, LLC
                  5935 Rivers Avenue, Suite 102
                  North Charleston, SC

TAKEN BY:         Counsel for the Plaintiff

REPORTED BY:      SANDRA K. BJERKE, RDR, CRR, CBC

_____

A. WILLIAM ROBERTS, JR. & ASSOCIATES

Fast, Accurate & Friendly


 Charleston, SC    Hilton Head, SC   Myrtle Beach, SC
 (843) 722-8414    (843) 785-3263    (843) 839-3376

 Columbia, SC      Greenville, SC    Charlotte, NC
 (803) 731-5224    (864) 234-7030    (704) 573-3919

APPEARANCES OF COUNSEL:

ATTORNEYS FOR THE PLAINTIFF
ASA CROSS:

CLIFF CARLSON LAW, PC
BY:  CLIFFORD CARLSON
1114-C1 Highway 96, #347
Kathleen, GA  31047
(478) 254-1018
cc@cliffcarlsonlaw.com

and

DANIELS LAW LLC
BY:  RONALD EDWARD DANIELS
PO Box 1834
Perry, GA  31069
(478) 227-7331
ron@dlawllc.com

ATTORNEYS FOR THE DEFENDANT
SYNTER RESOURCE GROUP, LLC:

HAYS, POTTER & MARTIN, LLP
BY:  JAMES "BEAU" HAYS
3945 Holcomb Bridge Road, Suite 300
Peachtree Corners, GA  30092
(770) 934-8858
beau@hpmlawatl.com

(INDEX AT REAR OF TRANSCRIPT)

17

A.   Yes, we left a voice mail, based on the account notes on the system.

Q.   And you have recordings of the voice mail you left?

A.   Yes, sir.

Q.   Okay.  And did you disclose in that voice mail on December 5th that you were a debt collector?

A.   On that particular call we didn't.  We thought it was a commercial account.

Q.   Okay.  Why did you think it was a commercial account?

A.   When we looked at the -- the first thing we do is we look at the freight, the freight documents or the billing, the shipment details. And first off, we thought that, you know, someone shipping 600 pounds of used lab equipment wouldn't be something that a consumer would send and go put on a loading dock to have shipped to a A&A -- I forget the last part of their company.  And we had no reason to think it was a consumer debt when we got the business, got the account.

Q.   Did you ever later decide it was not a commercial debt?

A.   No.  We think it was -- always thought

33

Q.   How would you know there was payments being made?

A.   When we call and speak to the customer the first time.

Q.   So the account, when you get it, is delinquent.

A.   Yes, sir.

Q.   Okay.  If you look at Paragraph 31 in the complaint, it says you continued -- this is our allegation, was you continued to attempt to collect the alleged debt from the plaintiff despite not conducting any investigation into his dispute. That was denied.  So you did some sort of investigation?

A.   No, sir.

Q.   So no investigation was done.

A.   No, sir.

Q.   Okay.  Was this account different than any other account you got from Fed Ex status-wise, aside from his name and address?

A.   No, sir.

Q.   So it was in default.

A.   Yes, sir.

Q.   And you are authorized to collect debts for Fed Ex.

81

that Mr. Cross was a company versus a consumer?  Or an individual I think is the term you used in the guidelines.

A.    I mean, there was -- ask it one more time.  I'm sorry.

Q.    Is there anywhere in the documents we've looked at today --

A.    Um-hum.

Q.    -- where you've seen -- or even any documents you've seen anywhere that you can recall where it said Asa Cross, LLC or Asa Cross, Inc. or anything other than Asa Cross?

A.    No.

Q.    Okay.  So based on your FDCPA guidelines, he's an individual, not a company.

A.    We thought -- or we think it is -- it was a commercial account coming in.

Q.    Because of -- not because of the name but because of something on the bill of lading?

A.    We had no reason to believe it was a consumer account.

Q.    Okay.  Did you -- I don't want to talk about what your attorney told you or anything, but did you see the interrogatory requests we sent across?  By that I mean we sent to your attorney

first section allegedly is a former employee of

your organization, and just let me know when you're

done reading it.  I wasn't going to ask you about

any other thing other than that section.  You can

read all of it if you want, but --

A.    Okay.

Q.    So it's worth what it's worth, you

know.  So do you have any idea who this former

employee might be?

A.    No, sir.

Q.    But is that a pretty accurate

description of -- at least the first sentence, of

what Synter Resource does?  The first sentence.

I'm not going beyond that yet.

A.    Yes, sir.

Q.    Okay.  He states here most of the debts

are because the party that is using these

transportation companies fill out the bill of

lading -- I think that's spelled incorrectly,

but -- incorrectly, causing billing errors.

How often do you see -- how many times

have you seen the bill of lading filled out

incorrectly?

A.    I couldn't tell you.

Q.    More than 10?

A.    Yes.

Q.    More than a hundred?

A.    Over what period of time?

Q.    One year.

A.    Yes.

MR. CARLSON:  Okay.  I think I've had enough fun.  One thing I'm going to -- normally we'd pass the witness, but we do have some things I think we need to cover with -- it's Heather?

MR. HAYS:  Yeah.

MR. CARLSON:  So I'd like to suspend the deposition to talk to her, maybe.  I'm not opposed to you if you want to do some follow-up.  I know it's a little out of order.

MR. HAYS:  Yeah.  But if we want to talk about -- if you want to -- you'd like Heather to address this stuff?

MR. CARLSON:  Um-hum.

MR. HAYS:  We may be able to do it either like by phone or get it and verify it.

MR. CARLSON:  She's in Vegas; right?  Or Nevada; right?  I'm going to Nevada.

MR. HAYS:  I'm not.

MR. CARLSON:  You can call in.  I'll get a video set up.