<div align="center">

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

</div>

| | | |
|---|---|---|
| ASA CROSS, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | Case No. 5:17-cv-00446-MTT |
| | : | |
| | : | |
| SYNTER RESOURCE GROUP, LLC | : | |
|     Defendant. | : | |

### Plaintiff's Response to Defendant's Motion for Summary Judgment

Synter Resource Group, LLC ("Synter") has moved for summary judgment solely on the issue of whether the debt Synter attempted to collect from Asa Cross was a "debt" as defined by 15 U.S.C. § 1692a.[1] But Synter takes an extremely narrow view and seeks to impose a definition of "debt" that would make virtually every debt excluded from the Fair Debt Collection Practices Act.[2]

---

[1] Hereinafter the Fair Debt Collection Practices Act will be cited as "FDCPA."

[2] Synter cites definitions of "business," "commercial," and "commerce" in arguing Cross was doing business even if he was not running a business. To adopt the definitions proffered by Synter would render the FDCPA superfluous. Every consumer transaction inherently involves some level of commerce and commercial activity—without someone buying or selling a good or service there could be no transaction creating an obligation under 1692a. Further, Cross would show the current edition of Black's Law Dictionary defines business as "a commercial enterprise carried on for profit; a particular occupation or employment habitually

## I. Brief Factual History

Asa Cross took home several pieces of used testing equipment his employer was discarding.[3] Cross used the equipment as a hobbyist disassembling the equipment for fans and even building "little race cars."[4] Cross decided to sell some of the equipment on eBay that he had no use for and could not use.[5] This equipment

_____

engaged in for livelihood or gain." *Business*, Black's Law Dictionary (10th ed. 2014) and defines commercial as "1. Of, relating to, or involving the buying and selling of goods; mercantile <commercial advertising>. 2. Resulting or accruing from commerce or exchange <commercial gains>. 3. Employed in trade; engaged in commerce <commercial travelers>. 4. Manufactured for the markets; put up for trade <commercial products>. 5. Of, relating to, or involving the ability of a product or business to make a profit <commercial potential>. 6. Produced and sold in large quantities <commercial cosmetics>. 7. *Pejorative.* More concerned with money than with quality <he sold out and became commercial>." *Commercial*, Black's Law Dictionary (10th ed. 2014). It cannot be said from the evidence before this Court that Cross is part of a commercial enterprise or engaged in a habitually engaged occupation or employment with respect to this debt. And it cannot be said Cross' relationship with FedEx was commercial in nature using these definitions.

[3] Deposition of Asa Cross ("Cross") 12:10-17; 13:13-24; 17:3-7.

[4] Cross 14:2-24.

[5] Cross 34:9-21.

was the first and last time he would sell anything on eBay.[6] And Plaintiff did not have a business account with eBay.[7]

Cross contacted ANA Instruments—a company that purchased some of the testing equipment from eBay—about purchasing the remaining equipment Cross "had no use" for.[8] He agreed to sell ANA Instruments some of the equipment and he kept the rest for his own personal use.[9] ANA Instruments sent Plaintiff a bill of lading and instructed him to deliver the equipment to FedEx after stating ANA Instruments would pay all shipping charges.[10] Cross was not asked to sign anything, was not asked for a business name, and the bill of lading reflects he was shipping the equipment in his personal capacity and not as a business.

Several months later, Cross received a phone call and letters from Synter seeking to collect a debt owed to FedEx arising out of the shipping of the testing equipment.[11] Synter contacted Cross several times and in all but one of these

---

[6] *Id.*

[7] Cross 65:21-66:7.

[8] Cross 37:21-38:5; 38:14-21.

[9] *Id.*

[10] Cross 45:4-19; 46:6-21.

[11] *See* Exhibit "D" to Deposition of John Church ("Church"); Church 49:16-24.

1873-0038

communications, which were all an attempt to collect a debt, Synter complied with the requirements of the FDCPA and treated the debt as a consumer debt.[12]

FedEx never provided any information to Synter indicating the account was a "commercial" account.[13] Synter has no way of keeping track whether an account is commercial debt or consumer debt.[14] The first employee at Synter who looked at the account determined it was a commercial rather than consumer debt.[15] Synter never made any sort of notation the account was a commercial account.[16] The entirety of this determination was made simply because the bill of lading stated "used testing equipment."[17]

## II. <u>Argument and Citation of Authority</u>

### A. FDCPA and the summary judgment standard.

To prevail on a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, the moving party must demonstrate "that there is no

---

[12] *See* ECF Doc. No. 15-8 pp.13-17.

[13] Church 17:6-18:14; 18:21-19:17.

[14] Church 18:15-23.

[15] Church 36:11-20.

[16] Church 37:12-15.

[17] Church 106:24-107:4.

1873-0038

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[18] When ruling on a party's motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party.[19] A genuine issue of material fact to prevent an award of summary judgment exists "if the combined body of evidence, viewed in the light most favorable to the nonmoving party, would allow a reasonably jury to find in favor of the nonmoving party."[20]

Stated differently, "the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury of whether it is so one- sided that one party must prevail as a matter of law."[21] "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" [22]

---

[18] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[19] *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

[20] *Georgia Cas. & Sur. Co. v. Atmos Energy Corp.*, No. 4:05-CV-87 (CDL), 2007 WL 4293065, at *3 (M.D. Ga. Dec 3, 2007).

[21] *Id*. (citations and quotations omitted).

[22] *Harris v. U.S.*, 227 Fed.Appx. 729, 793 (11th Cir. 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)).

In the context of a motion for summary judgment, "[t]he substantive law applicable to the case determines which facts are material."[23] Further, "[t]he district court should resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inference in his favor."[24]

Because "[t]he substantive law applicable to the case determines which facts are material,"[25] this Court must give some consideration to the statutory purpose of the FDCPA and GFBPA. Consumer protection statutes—such as the Truth in Lending Act, the Fair Credit Reporting Act, and their sister statute, the FDCPA— are "remedial in nature and therefore must be construed liberally in order to best serve Congress' intent."[26]

### B. Synter has failed to meet its burden.

Cross first notes Synter purports to rely on Plaintiff's Responses to Defendant's First Interrogatories in its Motion for Summary Judgment.[27] But this

---

[23] *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

[24] *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991).

[25] *Fitzpatrick*, 2 F.3d at 1115.

[26] *Ellis v. General Motors Acceptance Corporation*, 160 F.3d 703, 707 (11th Cir. 1998).

[27] ECF Doc. No. 15.

1873-0038

document is not in the record before this Court as Synter only filed Plaintiff's Responses to Defendant's Second Interrogatories.[28] Accordingly, references to those responses are not proper for consideration by this Court at this juncture. Further, Synter makes several unsupported statements in support of its motion, including the allegation there was no indication this debt was "any different than all of the other commercial transactions that started with a large pallet being delivered to the Macon freight facility."[29]

These procedural issues aside, Synter has failed to carry its burden and is not entitled to summary judgment as a matter of law.

### i. At best the evidence establishes the debt was a "debt."

The debt arises from the transaction between Cross and FedEx.[30] Other than the weight of the goods shipped, there is nothing on the bill of lading or shipping information which would indicate to anyone the shipment was not for personal

---

[28] See ECF Doc. No. 15-4; 15-3 (Noting only the filing of only Plaintiff Asa Cross' Responses to Synter Resource Group, LLC's Second Interrogatories to Plaintiff Asa Cross.)

[29] ECF Doc. No. 15-2 at 11.

[30] ECF Doc. No. 15-8 at pp. 13-19.

purposes. [31] Cross used some of the items he dug out of the trash.[32] He kept some of the items rather than selling them.[33] Synter's contends because Cross sold some testing equipment he must be engaged in a commercial activity.[34] This argument must fail as a matter of logic; every consumer debt is the result of some level of interaction with commercial activity.

Indeed, the Eleventh Circuit has long noted "a "transaction" under the FDCPA must involve some kind of business dealing or other consensual obligation."[35] Moreover, Synter's argument has been rejected in dicta by the Eleventh Circuit in *Oppenheim*.[36] Oppenheim sold a laptop on a website and the purchaser paid for the laptop via a third party payment processor known as PayPal.[37] The transaction ultimately resulted in PayPal seeking to collect money from Oppenheim through a debt collector.[38] Unquestionably, PayPal was used to finish the initial transaction

---

[31] Church 106:24-107:4.

[32] Cross 14:2-9 (describing use of part as "fiddle with stuff around the house" like fans and building little race cars).

[33] Cross 21:9-18.

[34] *See generally* ECF Doc. No. 15-2.

[35] Hawthorne v. Mac Adjustment, 140 F.3d 1367, 1371 (11th Cir. 1998).

[36] *Oppenheim v. I.C. Sys.*, 627 F.3d 833, 837 (11th Cir. 2010).

[37] Id.

[38] *Id.*

with the laptop. The debt collector argued Oppenheim's use of PayPal was for consummating a commercial transaction—as Synter does here—which the Court expressly rejected finding "[t]he mere fact that he consumes PayPal's services in order to facilitate a separate sale does not thereby negate his consumer status with respect to PayPal."[39] And in dicta, the Oppenheim Court rejected Synter's contention here stating:

> In any event, we are unpersuaded that the sale of Oppenheim's _personal_ computer—the funds from which were ultimately transferred to Oppenheim's _personal_ bank account—violates the "personal, family, or household purposes" requirement. Oppenheim does not run a business and specifically registered his PayPal account as a "personal account," which the User Agreement defines as an account "used for non-business purposes and used primarily for personal, family, or household purposes."[40]

Here, Cross used FedEx to ship items he personally acquired for his own benefit.[41] They were not purchased for a business purpose. They were discarded and he took them home to see if he could find any use for them, some of which he did.[42] He then sold the items he could not use.[43] Cross did not own a business.[44] Cross did

---

[39] _Id_.

[40] _Id_ at 838-839. (Emphasis in original).

[41] _See generally_ Cross 12:10-17; 13:13-24; 17:3-7.

[42] Cross 14:2-9.

[43] Cross 34:9-21.

[44] ECF Doc. No. 15-4 at 2.

not have a business account with eBay.[45] The bill of lading does not reflect Cross

used a business name.[46] There is no evidence the service Cross used to ship his goods

was only for commercial shipping.[47] These facts are in line with those with the

*Oppenheim* Court's finding the debt qualified as a "debt" pursuant to the FDCPA.

As was in *Oppenheim*, Cross entered into a consensual economic dealing with FedEx

for FedEx to render a personal service for a monetary sum.[48] Synter improperly

conflates the transaction out of which Cross' obligation to FedEx arose and a

separate and distinct liability.[49]

---

[45] Cross 65:21-66:7.

[46] ECF Doc. No. 15-8 pp 18-19.

[47] Synter hints at this argument, but there is no evidence in the record supporting such facts. Indeed, Cross testified it appeared there was someone there taking orders at FedEx. Cross 66:17-67:1.

[48] "[T]he antecedent of the first 'which' in the clause 'in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes' is, as a matter of grammar anyway, the transaction out of which the obligation to repay arose, not the obligation itself." *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000) (finding that the FDCPA applied to a law firm's attempts to collect mortgage debt even though, at time debt collection efforts began, the mortgagor was renting premises to strangers and thus was making business use of property).

[49] *Id.*

1873-0038

Further, viewing the totality of the circumstances, Synter treated the debt as a "debt" under the FDCPA in virtually every attempt to collect the debt from Cross.[50] In three dunning letters, Synter included language required pursuant to 1692g and made disclosures required by 1692e in at least one voicemail message.[51] The only times Synter has not treated the debt as a consumer debt is when an employee left a voicemail message and when Synter was served with this lawsuit.[52] While these facts are not determinative, they do illustrate even Synter—at some point in time—believed it prudent to treat the debt as a "debt" under the FDCPA.

    *ii.*     *At worst the evidence establishes there is a dispute regarding the purpose of the debt.*

Assuming there was merit to Synter's argument that the debt arising form the transaction between Cross and FedEx could be classified as not a "debt" under the FDCPA, the evidence is in dispute and requires a jury to determine the nature of the debt. Simply put, there is no evidence other than the weight and description of the shipment giving FedEx or Synter a reason to believe the transaction between Cross

---

[50] ECF Doc No. 15-8 pp. 13-17.

[51] *Id.*

[52] ECF Doc. No. 15-8 at 13-17.

and FedEx was commercial.[53] But even then, the belief by FedEx (and Synter) that a transaction was commercial in nature is dispositive of whether a debt is a "debt."[54] "[N]either the lender's motives nor the fashion in which the loan is memorialized are dispositive of this inquiry." [55]

In *Slenk*, a consumer purchased a backhoe and used it to build his home and then sold the backhoe. The consumer also ran a construction company and there was some evidence the lender believed the debt created by the purchase of the backhoe was not for personal, family, or household purposes.[56] The Ninth Circuit found summary judgment was inappropriate given the disputed facts regarding the intent of the parties.[57] Here, there isn't even a peppercorn of evidence that Cross ever ran a business.

---

[53] Church 17:6-18:14; 18:21-19:17; 26:11-20; 106:24-107:4.

[54] *See Slenk v. Transworld Systems, Inc.*, 236 F.3d 1072, 1075 (9th Cir. 2001).

[55] *Id.* (*quoting Bloom v. I.C Systems, Inc.*, 972 F.2d 1067, 1068 (9th Cir. 1992))

[56] *Id.*

[57] *Id*; the *Slenk* Court relied on the fact that the underlying agreement for the purchase of normally commercial heavy equipment was not noted to be a commercial transaction and there was disputed information about whether the loan was made in the name of the business.

1873-0038

Analyzing a case involving the Truth in Lending Act—a sister statute to the FDCPA which also requires transactions to be primarily for personal, family, or household purposes—the Fifth Circuit found a loan was primarily for "personal, family, [or] household" purposes when a consumer took out a loan to remodel a house in Alabama.[58] The consumer was actively renting the property while living and working in Detroit.[59] But there was some evidence the consumer intended to return to the Alabama house, thus making the loan in question for personal, family, or household purposes.[60] And district courts routinely find disputed facts about the purpose of a loan under the Truth In Lending Act are a basis for denying summary judgment. [61]

Again, considering the remedial nature of the FDCPA, the burden placed on the moving party, and the totality of the circumstances, the Court must look to the following:

---

[58] *Tower v. Moss*, 625 F.2d 1161, 1167 (5th Cir. 1980).

[59] *Id*.

[60] *Id*.

[61] *See e.g. Rust v. Boswell*, 2013 WL 12099655, *11–12 (N.D. Ga. Oct. 4, 2013) (facts supporting consumer and business purpose defeats defendant's summary judgment)

1873-0038

- Cross does not run a business.[62]

- Cross obtained the equipment not for a business purpose, but simply asked if he could have old equipment which was being thrown away.[63]

- Cross stored the equipment in his garage.[64]

- Cross only sold the equipment he didn't need or couldn't use and kept several pieces of equipment.[65]

- Cross sold the equipment he had no use for using his personal eBay account and his personal email account.[66]

- Cross used FedEx to ship the equipment he sold.[67]

- Nothing on the bill of lading notes Cross was representing a business.[68]

- Nothing on the bill of lading indicates it is a business shipment.[69]

---

[62] Synter admits Cross doesn't run a business in Synter's Memorandum. *See* ECF Doc. No. 15-2 at 7.

[63] Cross 17:3-7.

[64] Cross 14:14-24.

[65] *Id*.

[66] ECF Doc. No. 15-6 at pp. 25-29.

[67] ECF Doc. No. 15-8 at pp. 16-20.

[68] ECF Doc. No. 15-8 at pp. 18-19.

[69] *Id*.

1873-0038

- There is no evidence a consumer cannot use FedEx's freight services.[70]

- Cross was not asked to give a business name when he went to FedEx.[71]

- FedEx did not inform Synter the account was a commercial account.[72]

- Synter has no means in its account documentation system of distinguishing between a commercial and consumer account.[73]

- In all but one attempt to collect the debt, Synter treated the debt as a consumer debt and not a commercial debt.[74]

To the extent that it is possible the debt is a commercial debt and not a "debt," such a determination requires resolution by a jury because "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[75]

---

[70] Synter makes an assertion there was no basis for anyone at FedEx or Synter to believe this was anything less than a commercial shipment, but this is not evidence. Cross generally describes the FedEx location as a storefront with a person at the counter taking orders.

[71] Cross 66:1-67:20.

[72] Church 17:6-18:14; 18:21-19:17; see also ECF Doc. No. 15-6 at pp. 37-39.

[73] Church 18:15-23.

[74] ECF Doc No. 15-8 pp. 13-17.

[75] *Likes v. DHL Express (USA), Inc.*, 787 F.3d 1096, 1098 (11th Cir. 2015).

1873-0038

### III.  Conclusion

Here, Cross' alleged obligation arises from a transaction between Cross and FedEx where FedEx was to provide a service for Cross' personal benefit. Not the benefit of Cross' non-existent business. Not the benefit of the recipient of the goods. But for Cross' benefit. In sum, Cross' alleged obligation to FedEx constitutes a debt under the FDCPA. Synter is therefore not entitled to summary judgment on Cross' claim for unfair or harassing debt collection practices in violation of the FDCPA.

Submitted October 1, 2018.

**DANIELS LAW LLC**

/s/Ronald Edward Daniels
RONALD EDWARD DANIELS
Georgia Bar No.: 540854
Counsel for Plaintiff

P.O. BOX 4939
Eastman, GA 31023
478.227.7331 (t)
478.352.0173 (f)
ron@dlawllc.com
rondanielslaw.com

/s/ Clifford Carlson
Clifford Carlson
Georgia Bar No. 227503

Cliff Carlson Law, P.C.
1114-C1 Highway 96 #347
Kathleen, Georgia 31047
Tel. 478-254-1018
cc@cliffcarlsonlaw.com

1873-0038

<div align="center">

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

</div>

ASA CROSS,                       :
     Plaintiff,              :
                     :
v.                               :   Case No. 5:17-cv-00446-MTT
                     :
                     :
SYNTER RESOURCE GROUP, LLC:
     Defendant.              :

<div align="center">

## CERTIFICATE OF SERVICE

</div>

I hereby certify that this the 1st day of October 2018, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. Mail, first-class, postage pre-paid.  Parties may access this filing through the Court's electronic filing system.

<div style="margin-left: 50%;">

/s/ Clifford Carlson
Clifford Carlson
Georgia Bar No. 227503

</div>

Cliff Carlson Law, P.C.
1114-C1 Highway 96 #347
Kathleen, Georgia 31047
Tel. 478-254-1018
cc@cliffcarlsonlaw.com

1873-0038