**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

ASA CROSS, )
)
    Plaintiff, )
)
v. )   **CIVIL ACTION NO. 5:17-CV-446 (MTT)**
)
)
SYNTER RESOURCE GROUP LLC, )
)
)
    Defendant. )
)

## ORDER

Defendant Synter Resource Group, LLC and Plaintiff Asa Cross have filed cross motions for partial summary judgment. Docs. 15; 16. The Plaintiff alleges that the Defendant violated sections of the Fair Debt Collection Practices Act ("FDCPA") and Georgia Fair Business Practices Act ("GFBPA"). Doc. 5. For the following reasons, those motions (Docs. 15; 16) are **DENIED**.

### I.  BACKGROUND[1]

This case arises out of the Plaintiff's charges he incurred from FedEx Freight after shipping items he sold to ANA Instruments over eBay. In January 2016, the Plaintiff's former employer allowed him to take discarded commercial electronic testing equipment. Doc. 15-5 at 15:5-6, 31:1-33:7, 65:23-67:1. The Plaintiff kept the equipment in his sister's garage for a few months while he removed some equipment parts to build mini-racecars and fans; he advertised the unused portions of the

---

[1] Unless stated otherwise, the facts are undisputed and are viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

equipment for sale on his personal eBay account. *Id.* at 11:21-13:3; 27:4-13; 69:1-15. During February and March, the Plaintiff sold pieces of equipment to various buyers, and the money from those sales was sent to his personal bank account. Doc. 15-5 at 101:5-12. *Id.* at 71:8-73:10. On May 3, the Plaintiff contacted ANA; ANA agreed to buy a majority of the equipment and sent money to the Plaintiff's personal PayPal account, which PayPal then deposited to the Plaintiff's personal bank account. *Id.* at 77:14-83:10, 95:17-19, 99:1-101:12; Doc. 15-6 at 17-29. ANA also agreed to pay the cost of shipping and sent the Plaintiff a FedEx Freight bill of lading. Docs. 15-5 at 83:15-91:21; 15-6 at 22. On May 6, the Plaintiff took the equipment to the FedEx loading dock, and FedEx shipped the equipment to ANA. Doc. 15-5 at 83:15-91:12. According to the Plaintiff, after a FedEx employee at the loading dock reviewed the bill of lading, the employee told the Plaintiff that ANA was responsible for the payment of the shipment, and that the Plaintiff did not owe FedEx for the shipment. *Id.* at 91:6-12.

On May 12, FedEx sent the Plaintiff a $1,065.36 invoice for the shipment stating that payment was due on May 27. Doc. 15-6 at 30-32. The Plaintiff states he did not receive the invoice and thus did not make the payment. Doc. 15-5 at 101:13-103:4. After receiving another invoice on July 23, the Plaintiff called FedEx to ask "what was going on and how [he] owed them anything," and learned that there was a defect in the bill of lading that caused FedEx to consider the Plaintiff responsible for the charges. *Id.* at 103:16-24; Doc.15-6 at 38. The Plaintiff tried unsuccessfully to contact ANA about correcting the defect. Doc. 15-5 at 103:16-24. FedEx continued to send the Plaintiff monthly invoices. Doc. 15-6 at 44-56.

In November, FedEx placed the Plaintiff's account with the Defendant, a receivables management company. Doc. 15-8 at 14. On November 8, the Defendant sent the Plaintiff a demand letter that complied with the FDCPA and GFBPA. Docs. 15-5 at 113:19-115:4; 15-6 at 62; 15-8 at 38. On December 5, the Defendant left a voicemail on the Plaintiff's cell phone, which said, "Hi this is Dominique[.] I'm calling from Synter Resource, on behalf of FedEx. I'm trying to contact the accounts payable regarding an outstanding invoice forwarded to our office for collection."[2] Doc. 15-8 at 13. On December 8, the Defendant sent a second demand letter. Doc. 15-6 at 63. On December 11, the Plaintiff sent the Defendant a letter disputing the debt and demanding verification. *Id.* at 65-66. The Defendant claims that it never received the Plaintiff's letter. Docs. 15-7 at 37:18-22; 16-5. On December 23, the Defendant left another voicemail with the same message left on December 5. Doc. 15-8 at 13, 38. The Defendant continued to send demand letters to the Plaintiff until January 2017. Doc. 15-6 at 50-56. On January 17 and January 25, the Defendant left two more voicemails, both of which said, "[W]e have an important message from Synter Resource Group, this is a call from a debt collector." Doc. 15-8 at 13. On February 5, the Defendant closed the Plaintiff's account. Doc. 15-7 at 241:11-20.

On November 11, 2017, the Plaintiff filed his complaint, alleging that the Defendant violated the FDCPA and GFBPA by (1) failing to identify itself as a debt collector in its December 5 and December 23 voicemails, and (2) failing to cease its collection efforts after receiving the Plaintiff's December 11 letter requesting verification

---

[2] The Plaintiff understood that the voicemail was an attempt to collect his FedEx debt. Doc. 15-5 at 125:8-22.

and disputing the debt. Doc. 1. The parties now file cross motions for partial summary judgment.[3] Docs. 15; 16.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment must be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Johnson v. Clifton,* 74 F.3d 1087, 1090 (11th Cir.1996). Not all factual disputes render summary judgment inappropriate; only a genuine issue of material fact will defeat a properly supported motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law. *Celotex,* 477 U.S. at 323 (internal quotation marks omitted). If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact or that the moving party is not entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(e); *Celotex,* 477 U.S. at 324-26. This evidence must consist of more than mere conclusory allegations or legal conclusions. *See Avirgan v. Hull,* 932 F.2d 1572, 1577 (11th Cir.

---

[3] Although not labeled as a motion for partial summary judgment, the Defendant did not move for summary judgment on the Plaintiff's Georgia Fair Business Practices Act claim. *See generally* Doc. 15-2. The Court will thus construe the motion as a motion for partial summary judgment.

4

1991). Ultimately, summary judgment must be entered where "the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex,* 477 U.S. at 323.

### III. DISCUSSION

**A. FDCPA**

The FDCPA regulates and restricts debt collection practices to prevent "the use of abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692. To succeed on a FDCPA claim, the Plaintiff must prove that (1) the Plaintiff has been the object of collection activity arising from a "consumer debt" as defined by the FDCPA; (2) the Defendant is a "debt collector" as defined by the FDCPA; and (3) the Defendant has engaged in an act or omission prohibited by the FDCPA. *Reese v. Ellis, Painter, Ratterre & Adams, LLC*, 678 F.3d 1211, 1216 (11th Cir. 2012). "As a remedial statute, the provisions of the FDCPA are to be construed liberally in favor of the consumer." *Hart v. Vital Recovery Servs., Inc.*, 2013 WL 12116580, at *5 (N.D. Fla. 2013) (citing *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 707 (11th Cir. 1998)) (other citation omitted).

The Defendant argues in its motion for partial summary judgment only that the Plaintiff's transaction was not a "debt" as defined by the FDCPA. *See generally* Doc. 15-2. The Plaintiff argues in his motion for partial summary judgment that (1) he is a consumer; (2) the Defendant is a debt collector; (3) his debt is covered by the FDCPA; and (4) the Defendant violated two sections of the FDCPA, specifically § 1692e(11) and

5

§ 1692g(b).[4] *See generally* Doc. 16-1. The Defendant does not dispute that it is a debt collector or that the Plaintiff is a consumer. Doc. 15-2 at 4; *see generally* Doc. 17. But the parties have failed to show that there is no genuine issue of material fact that the Plaintiff's debt is covered by the FDCPA. Thus, the Court will not address the Plaintiff's remaining arguments. *See Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 836-37 (11th Cir. 2010) ("To recover under . . . the FDCPA[,] . . . a plaintiff must make a threshold showing that the money being collected qualifies as a 'debt.'")

The FDCPA defines debt as "any obligation or alleged obligation of a consumer to pay money arising out of transaction in which . . . the subject of the transaction [is] *primarily for personal, family, or household purposes*." 15 U.S.C. § 1692(a)(5) (emphasis added). The collection of payments related to business or commercial debts is excluded from the FDCPA's coverage. *Heintz v. Jenkins*, 514 U.S. 291, 293 (1995). In other words, the debt "must involve *consumer* transactions to be actionable." *Fuller v. Becker & Poliakoff, P.A.*, 192 F. Supp. 2d 1361, 1367 (M.D. Fla. 2002) (emphasis in original) (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1372 (11th Cir. 1998)). When considering the purpose of the transaction, courts must "examine the transaction as a whole" by considering "the purpose for which the credit was extended." *See Tower v. Moss*, 625 F.2d 1161, 1166 (5th Cir. 1980).[5]

In *Oppenheim v. I.C. System, Inc.*, Oppenheim sold his personal used laptop to a buyer via Craigslist. 627 F.3d at 835. Oppenheim "instructed the laptop buyer to make

---

[4] Section 1692e(11) of the Fair Debt Collection Practices Act ("FDCPA") requires creditors to disclose certain information when attempting to collect a debt, and § 1692g(b) requires creditors to cease certain collection activities when a debtor seeks validation of his debt. 15 U.S.C. §§ 1692e(11), 1692g(b).

[5] Decisions of the Fifth Circuit rendered prior to October 1, 1981 "shall be binding as precedent in the Eleventh Circuit." *Bonner v. City of Pritchard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

payment for the computer by depositing funds into [his] account with PayPal," an e-commerce business that facilitates money transfers. *Id.* Oppenheim's agreement with PayPal allowed PayPal to reverse a transaction if a payment was invalidated by the sender's bank, with Oppenheim bearing the risk of such reversals and being liable to PayPal for the full amount of the payment and applicable fees. *Id.* When PayPal notified Oppenheim that the buyer's payment was fraudulent, Oppenheim refused to pay PayPal. *Id.* at 836. PayPal then hired the defendant, I.C. System, Inc., to recover the money from Oppenheim, and I.C. violated the FDCPA when it contacted Oppenheim. *Id.*

After the district court denied I.C. summary judgment and a jury returned a verdict for Oppenheim, I.C. appealed the district court's denial of summary judgment. *Id.* The Eleventh Circuit upheld the district court's denial. *Id.* at 839. The Eleventh Circuit reasoned that Oppenheim's debt did not violate the "consumer purpose" requirement of the FDCPA because the underlying transaction was the sale of Oppenheim's personal computer; the funds from the sale were transferred to Oppenheim's personal bank account; Oppenheim did not run a business; and Oppenheim registered his PayPal account as a personal account, "which the User Agreement defin[ed] as an account 'used for non-business purposes and use primarily for personal, family, or household purposes.'" *Id.* at 838-39.

In both his motion and his response to the Defendant's motion, the Plaintiff argues that, like Oppenheim, the subject of his debt was for a personal purpose because (1) he used parts of the equipment to build fans and "little race cars" as a hobby before selling the remainder that he could not use; (2) he did not have a business

7

account with eBay; (3) the money he made from the transaction went to his personal account; (4) he "is not in the business of buying and selling electronics equipment;" and (5) he did not represent himself as a business to FedEx. Docs. 16-1 at 6-8; 18 at 2, 8-10 (citations omitted). In both its motion and its response to the Plaintiff's motion, the Defendant argues that, unlike Oppenheim, the subject of the Plaintiff's debt was for a commercial purpose because he (1) sold "commercial-grade equipment;" (2) "sold it by advertising the items for sale in a widely-accessed sales forum and engaged with multiple buyers to complete several sales;" and (3) was "actually operating a business of buying and selling commercial electronics testing equipment . . . known as a 'side hustle.'" Docs. 15-2 at 4-7; 20 at 3 (citations omitted).

When viewing each of the parties' motions and the undisputed facts in the light most favorable to the nonmoving party, the Court cannot determine as a matter of law that the Plaintiff's debt was for a commercial or consumer purpose. Although the facts regarding this issue are not in dispute, the inferences drawn from the facts are. Like Oppenheim, it is undisputed that the Plaintiff had personal eBay and PayPal accounts, and proceeds from the sale were transferred to the Plaintiff's personal bank account. Doc. 15-5 at 101:5-12. But the other factors considered in *Oppenheim*, including the purpose of the equipment's use and whether the Plaintiff intended the sale of the equipment to be a "side hustle" or to dispose of equipment he found while "dumpster diving" for mini-racecar parts, are disputed. *Compare* Doc. 15-2 at 7 *with* Doc. 16-1 at 1. Accordingly, both parties' motions for summary judgment regarding the Plaintiff's FDCPA claim are **DENIED**.

### B. GFBPA

The Plaintiff also moves for summary judgment on his GFBPA claim. Doc. 16-1 at 11-13. A violation of the FDCPA constitutes a violation of the GFBPA. *Harris v. Liberty Cmty. Mgmt., Inc.*, 702 F.3d 1298, 1303 (11th Cir. 2012) (citing *1st Nationwide Collection Agency v. Werner*, 288 Ga. App. 457, 654 S.E.2d 428 (2007)). The GFBPA's definition of a consumer debt is to be construed consistently with interpretations of the FDCPA. *See* O.C.G.A. § 10-1-391(b); *Gilmore v. Account Mgmt., Inc.*, 357 F. App'x 218, 219-20 (11th Cir. 2009). Given the contradictory inferences on the issue of whether the Plaintiff's obligation is a debt covered by the FDCPA, a material factual dispute also exists on whether the Plaintiff's obligation is a debt covered by the GFBPA. Accordingly, the Plaintiff's motion for partial summary judgment on his GFBPA claim is **DENIED**.

### IV. CONCLUSION

The Plaintiff must establish that his obligation to pay the Defendant is a debt within the meaning of the FDCPA to recover. There is a genuine issue of material fact of whether the Plaintiff's obligation to pay the Defendant constitutes a debt within the meaning of the FDCPA and thus, whether it constitutes a debt within the meaning of the GFBPA. Accordingly, the Plaintiff's motion for partial summary judgment (Doc. 16) and the Defendant's motion for partial summary judgment (Doc. 15) are **DENIED**.

**SO ORDERED**, this the 10th day of April, 2019.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT